UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONARCH FIRE PROTECTION DISTRICT OF ST. LOUIS COUNTY, MISSOURI, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:08CV01424 ERW |
| FREEDOM CONSULTING & AUDITING SERVICES, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's First Motion for Summary Judgment (Count I – Breach of Contract, Defendant Freedom) [doc. #162], Plaintiff's Second Motion for Summary Judgment (Count III – Conversion, All Defendants) [doc. #164], Plaintiff's Third Motion for Summary Judgment (Count V – Mandatory Injunction, All Defendants) [doc. #166], Defendants' First Motion for Partial Summary Judgment Regarding Nonrecoverability of Attorney Fees [doc. #219], Defendants' Second Motion for Partial Summary Judgment on Count III for Conversion [doc. #228], Defendants' Third Motion for Partial Summary Judgment Regarding Nonrecoverability of Damages Arising from Mismanagement [doc. #231], Defendants' Fourth Motion for Partial Summary Judgment Regarding Nonrecoverability of Punitive Damages [doc. #234], and Defendants' Fifth Motion for Partial Summary Judgment on Rescission (Count II) [doc. #237].

# I.     BACKGROUND[1]

Plaintiff Monarch Fire Protection District of St. Louis County, Missouri ("Plaintiff") is an incorporated fire protection district governed by a board of directors.  Plaintiff is a party to a collective bargaining agreement with The Professional Firefighters of Eastern Missouri, Local 2665 of the International Association of Firefighters ("Local 2665"), which acts as exclusive bargaining agent for firefighters, paramedics, dispatchers, and support personnel employed by Plaintiff.  In 2002, Plaintiff instituted a self-funded group health plan ("the Plan") for its employees and certain other participants, including its board of directors.  Under the terms of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Plan is subject to privacy rules restricting the sharing of Protected Health Information ("PHI") – in general terms, individually-identifiable information created or received by a health care plan or provider.[2]  In instituting the Plan, Plaintiff elected to become a hybrid entity under HIPAA, meaning that only Plaintiff's health care component – i.e., the Plan – is required to comply with these regulations.[3]

In January 2007, Local 2665's Pension, Health, and Welfare Committee ("the Committee") asked Plaintiff to permit it to perform an independent audit of the Plan.[4]  After

---

[1] The Court's recitation of the facts is taken from the parties' numerous statements of uncontroverted facts, filed in conjunction with the above-referenced Motions.  As an aside, the Court wishes to advise the parties that in the future, at least as a matter of practice in the Eastern District, they should refrain from filing a separate motion for summary judgment for each claim or issue, as it results in an unnecessary number of briefs and statements of material facts, many of which are largely redundant.  Additionally, this tactic strikes the Court as a fairly blatant attempt to avoid the page limitation on summary judgment briefs set out in Local Rule 7-4.01(D).

[2] *See* 45 C.F.R. § 160.103.

[3] *See id.*

[4] Local 2665's motivation for commissioning the independent audit is disputed by the parties, but it is not relevant to the pending motions.  The same could be said for Plaintiff's motivation for filing this lawsuit.

receiving Plaintiff's permission, the Committee contacted Defendant Karen Indellicati ("Indellicati") in order to have her company, Independent Insurance Auditing Services ("IIAS"), perform the audit. The Committee related its concerns about benefit abuse to Indellicati, and informed her that it was concerned that Plaintiff's board had permitted one specific individual to use the Plan for procedures that should not have been covered. Shortly thereafter, Indellicati sold IIAS to Freedom Consulting & Auditing Services, Inc. ("Freedom"), owned by Defendant Brett Turner ("Turner"). Indellicati continued to work for Freedom, however, and Freedom operated under the IIAS name throughout the audit process.

In order to share PHI with third parties, such as auditors, HIPAA requires health care plans and providers to enter into business associate agreements, contracts obligating the third parties to abide by HIPAA's restrictions on PHI disclosures.[5] In May 2007, Plaintiff, the Plan, and Freedom finalized a business associate agreement ("the BAA"), with Turner and Indellicati signing on behalf of Freedom. Local 2665 also took part in the BAA negotiations, represented by attorney Andrew Haynes ("Haynes"). Following the execution of the agreement, Freedom received PHI related to covered individuals' use of the Plan, such as claim documents, medical bills, medical records, and reports of paid claims, which Freedom then used to perform its audit. This documentation consisted of copies of Plan documents and reports generated from information that remained with the Plan administrator.

In the course of carrying out the audit, Indellicati determined that the final product would consist of two separate documents: a Public Audit Report, with aggregate data and no unique identifiers, and a Privileged Supplement containing PHI – specifically, discussions of the medical claims of specific individuals and the actions of Plaintiff's board of directors in approving or

---

[5] *See* 45 C.F.R. § 164.502(e).

denying those claims, accompanied by the relevant medical records as exhibits. Prior to finalizing these reports, Indellicati compiled an advance draft of the Privileged Supplement, which she shared with Haynes and Rick Barry ("Barry"), also an attorney for Local 2665. At some point during the audit process – it is not clear when – Haynes and Freedom entered into an attorney-client relationship, while Barry continued to act solely on behalf of Local 2665. Indellicati had repeated discussions with Barry and Haynes about the contents of the Supplement and ultimately finalized it in October 2007, and again delivered copies to both of them. Barry has since refused Plaintiff's demands that he return the Privileged Supplement and its exhibits.

Prior to delivering the Public Report and the Privileged Supplement to Plaintiff's board of directors, Barry shared the contents of these documents with local, state, and federal law enforcement. St. Louis County law enforcement took authority over the matter, and in December 2007, a grand jury issued a subpoena to be served on Freedom, seeking production of the complete audit and all supporting documentation. Pursuant to the BAA, Freedom notified Plaintiff about the subpoena on January 23, 2008, and on January 28th Freedom turned over the requested documents. In a letter dated March 14, 2008, Plaintiff requested Freedom to return all of the Plan materials it had received in the course of performing the audit. Haynes, acting at this point as attorney for Freedom, advised Turner and Indellicati not to do so due to the ongoing criminal investigation. Plaintiff then terminated the BAA in May 2008, alleging in a letter that Freedom had breached the agreement, and again requesting the return of all PHI.

The St. Louis County investigation did not ultimately lead to any criminal charges, and as a result, in June 2008 the St. Louis County prosecutor authorized Freedom to return the audit materials to Plaintiff. Freedom, however, did not actually return any documents until December 2008, after Plaintiff filed the present lawsuit. At that point, Freedom returned four boxes of

documents, and subsequently delivered several compact disks and additional copies of PHI documentation in response to discovery requests in this litigation. Freedom contends that it has returned all of the paper documentation to Plaintiff not incorporated into its work papers for the audit, but it admits that it has retained the Privileged Supplement and exhibits for purposes of its defense in this lawsuit. For the same reason, Freedom also admits that Indellicati and Turner have retained certain emails and possibly other electronic files containing PHI. Although Freedom acknowledges that some of its employees had access to the relevant PHI during the audit, it contends that it has since confirmed that any PHI those employees may have retained has since been returned to Freedom or destroyed.

Plaintiff filed this suit in July 2008, alleging that Freedom, Indellicati, and Turner improperly disclosed PHI from the audit to third parties, specifically Barry and Haynes. Plaintiff asserts claims against Freedom for breach of contract, or in the alternative, for rescission of the BAA, and against all Defendants for conversion, replevin, and for a mandatory injunction requiring Defendants to return to Plaintiff all PHI documents they received in the course of performing the Plan audit. Plaintiff seeks to recover as damages the attorneys' fees incurred in responding to the Privileged Supplement and in providing legal representation for its directors in connection with the St. Louis County criminal investigation, as well as its attorneys' fees from this litigation.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material

facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

Plaintiff moves for summary judgment on its Count I for breach of contract, its Count III for conversion, and its Count V for a mandatory injunction requiring Defendants to return all PHI from the audit to Plaintiff. Defendants move for summary judgment on Plaintiff's claims for conversion and rescission, and also for a ruling that Plaintiff is not entitled to recover its attorneys' fees from this litigation, any legal expenses connected to the BAA or the audit, and punitive damages.

### A. Breach of Contract and Rescission

Plaintiff contends that it is entitled to summary judgment on its breach of contract claim because Freedom breached a number of provisions of the BAA by, among other things, failing to immediately remove PHI from documentation received for purposes of the audit, disclosing PHI to Barry and Haynes, and retaining PHI after completing the audit.[6] Freedom does not dispute

---

[6] Freedom claims that the Court should not consider some of Plaintiff's arguments in favor of breach because Plaintiff, in its Motion, alleges that Freedom breached certain contract provisions not identified in its Complaint. The Court disagrees, as the notice pleading standard in Rule 8 does not require plaintiffs alleging breach of contract to specifically identify each allegedly breached provision. *See, e.g.*, *Facility Wizard Software, Inc. v. Se. Technical Servs., LLC*, 2009 WL 2059934, at *11 (N.D. Ill. 2009) (In seeking grant of motion to dismiss, "[defendant] cites to no proposition, and the court is aware of none, that requires a plaintiff to identify [in its complaint] which contractual provision it believes was breached so long as the contract itself is identified."). Furthermore, the Court agrees with Plaintiff that the parties' communications during

that it took any of those actions but contends that all were permissible under the terms of the BAA. In a related argument, Freedom asserts that it is entitled to summary judgment on Plaintiff's rescission claim because the parties can no longer be restored to the positions they occupied prior to the execution of the agreement.

The parties agree that this claim is governed by Missouri law, under which the elements of a claim for breach of contract are "(1) a mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract." *Norber v. Marcotte*, 134 S.W.3d 651, 658 (Mo. Ct. App. 2004). The fifth element, requiring proof of damage, does not refer to proof of actual damages; in Missouri a party may recover nominal damages if a breach is established and no actual damages are proven. *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 12 (Mo. Ct. App. 2002). The interpretation of an unambiguous contract is a question of law suitable for a determination on summary judgment, as is the threshold issue of whether the contract is ambiguous. *See Bd. of Educ. of St. Louis v. State*, 134 S.W.3d 689, 695 (Mo. Ct. App. 2004).

Plaintiff first claims that Freedom's possession of PHI put it in breach of the BAA, which according to Plaintiff, required Freedom to immediately remove all PHI from the documentation it received from the Plan. Freedom admits that it did possess and continues to possess PHI from Plaintiff's Plan; thus, the only question is one of contractual interpretation – whether the BAA prohibited Freedom from doing so. Here, Plaintiff refers to paragraph 2B of the BAA, which sets out Freedom's obligations with respect to protecting the confidentiality of PHI:

---

discovery put Freedom on notice of those alleged breaches which Plaintiff did not specifically plead in its Complaint.

[Freedom][7] agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. [Freedom] will implement administrative, physical, and technical safeguards including written policies and procedures that reasonably and appropriately protect the confidentiality, integrity, and availability of electronic PHI that it creates, receives, maintains, or transmits on behalf of [Plaintiff] as required by the Security Rule. Specifically, [Freedom] agrees not to keep in its possession or retain any health information, documents or notes containing individually identifiable information or that can be identified with a particular individual. In addition, [Freedom] agrees that it will remove any individually identifiable information from any documents containing any health information that [Freedom] receives from or on behalf of [Plaintiff] and [Freedom] will replace such individually identifiable information with a confidential control number.

Plaintiff contends that this provision, specifically the last two sentences, required Freedom to immediately de-identify PHI upon receipt of health care-related documentation.

The Court agrees with Freedom, however, that numerous other BAA provisions clearly contemplate Freedom using and possessing some amount of PHI, making the BAA ambiguous with respect to Freedom's duty to de-identify PHI. Specifically, the second sentence of the above provision refers to safeguards for the PHI that Freedom "creates, receives, *maintains*, or transmits." Furthermore, the entirety of Section 3 of the BAA relates to PHI disclosures that are permitted by the agreement – disclosures that would be permissible under HIPAA if made by Plaintiff, such as to report violations of state or federal law to the appropriate authorities. Accordingly, the Court concludes that although certain provisions of the BAA do appear to place an affirmative obligation on Freedom to immediately remove PHI from audit-related documentation, other provisions referring to Freedom's continued possession of PHI make the extent of that obligation unclear, precluding a finding on summary judgment that Freedom breached the BAA by retaining PHI.

---

[7] The BAA refers to IIAS instead of Freedom, but the Court has substituted Freedom as the contracting party for the sake of clarity.

Plaintiff next contends that Freedom breached the BAA by divulging the Privileged Supplement and its exhibits, containing the names of individuals who had submitted claims to the Plan along with records of their medical procedures, to Barry, attorney for Local 2665.[8] The parties do not dispute that these documents contained PHI, and that Freedom shared them with Barry; as above, therefore, this is purely a matter of interpreting the BAA to determine whether it prohibited these disclosures.

Freedom argues that Section 3 of the BAA entitled it to share the Privileged Supplement and the accompanying medical records with Barry. Section 3 states as follows:

> **PERMITTED USES AND DISCLOSURES BY [FREEDOM].** Except as otherwise limited in this Agreement, [Freedom] may use or disclose PHI to perform functions, activities, or services for, or on behalf of [Plaintiff]/Plan, provided that such use or disclosure would not violate the Security Rule or Privacy Rule [of HIPAA] if done by [Plaintiff]/Plan including the minimum necessary requirements thereto.

Freedom claims that its disclosures to Barry were permissible because Plaintiff would not be liable for such disclosures pursuant to HIPAA's whistleblower provision[9]:

---

[8] Plaintiff makes this same claim regarding Freedom's disclosures to Haynes, also an attorney for Local 2665. The parties agree, however, that at some point in the audit process, Haynes entered into an attorney-client relationship with Freedom. The Court does not consider whether these disclosures were impermissible because it is unclear from the record at what point that relationship came into being, and in any event, it would not affect the Court's resolution of this issue.

[9] Plaintiff argues that the BAA limited the permissible whistleblower disclosures beyond what is allowed by HIPAA, so that certain disclosures that would not be actionable against Plaintiff under HIPAA would be impermissible for Freedom under the BAA. Specifically, Plaintiff contends that while HIPAA permits disclosures to appropriate authorities or to certain attorneys regarding possible wrongdoing, the BAA only precluded liability for disclosures to authorities. While the Court is skeptical that the BAA could partially abrogate HIPAA's whistleblower provisions, making it a breach of contract for Freedom to share PHI with its attorney(s) if it suspected Plaintiff's operation of the Plan violated state or federal law, the Court does not consider this argument because it finds it unnecessary to the resolution of Plaintiff's Motion.

(1)     Disclosures by whistleblowers.  A covered entity is not considered to have
        violated the requirements of this subpart if a member of its workforce or a
        business associate discloses protected health information, provided that:
    (i)     The workforce member or business associate believes in good faith
                that the covered entity has engaged in conduct that is unlawful or
                otherwise violates professional or clinical standards . . . ; and
    (ii)    The disclosure is to:
      (A)  A health oversight agency or public health authority . . . or to
                an appropriate health care accreditation organization . . . ;
                or
      (B)  An attorney retained by or on behalf of the workforce member
                or business associate for the purpose of determining the
                legal options of the workforce member or business
                associate with respect to the conduct described in paragraph
                [](1)(i) of this section.

45 C.F.R. § 164.502(j)(1).  Freedom asserts that these disclosures were permissible because it had

a good faith belief that Plaintiff had engaged in unethical or unlawful conduct, and because Barry

was an attorney retained by a "workforce member," Local 2665.  Thus, pursuant to §

164.502(j)(1)(ii)(B), Freedom, as a business associate, could disclose PHI to Barry, an attorney

retained by or on behalf of a workforce member.

The Court disagrees with this interpretation, and finds that the statute speaks only to

disclosures that are made by a whistleblower to an attorney "retained by or on behalf of" *that*

whistleblower.  *See Vaughn v. Epworth Villa*, 537 F.3d 1147, 1153 n.4 (10th Cir. 2008) ("[T]he

whistleblower exception only applies to disclosures made to . . . '[a]n attorney retained by or on

behalf of the' whistleblower . . . .").  Put another way, a business associate's disclosure of PHI to

its own attorney for the purpose of determining its legal options is not a violation of HIPAA's

privacy rule, nor is a workforce member's disclosure of PHI to his or her own attorney for that

same purpose, but a business associate may not disclose PHI to an attorney retained by a

workforce member.  Logic dictates this result, as it would make little sense, given HIPAA's

emphasis on protecting PHI, for its whistleblower provision to authorize such disclosures to third-party attorneys.

A close examination of the language of § 164.502(j)(1) confirms that this is the correct interpretation. The regulation authorizes disclosures "for the purpose of determining the legal options" of that party, indicating that the whistleblower exception contemplates an attorney-client relationship. This is further supported by the use of definite instead of indefinite articles in (ii)(B); the provision refers to disclosures to "an attorney retained by or on behalf of *the* workforce member or business associate for the purpose of determining the legal options of *the* workforce member or business associate," which suggests that the attorney must be retained by or on behalf of the same party for whom the attorney is to ascertain the legal options.[10] Freedom admits that it did not have an attorney-client relationship with Barry at any relevant point in time, and its disclosures to Barry of the Privileged Supplement and its exhibits were therefore not permitted by this provision.

Furthermore, § 164.502(j)(1) only refers to disclosures to attorneys retained by workforce members *of a covered entity* – that is, workforce members of an entity subject to HIPAA. *See* 45 C.F.R. § 160.103 (defining "covered entity"). Plaintiff, however, designated itself as a hybrid entity pursuant to HIPAA, meaning that its self-funded group health plan is a covered entity – i.e., is subject to HIPAA – while the remainder of Plaintiff is not. *See id.* (defining "hybrid entity"). Plaintiff contends that none of the employees represented by Local 2665 for collective bargaining purposes are members of the Plan workforce, and there is no evidence in the record that suggests otherwise. As such, even if the Court agreed with Freedom's interpretation of the whistleblower

---

[10] Defendants' position would be stronger, in other words, if this provision referred to disclosures to an attorney retained by or on behalf of *a* workforce member or business associate for the purpose of determining the legal options of *a* workforce member or business associate.

provision, this provision would not sanction PHI disclosures to Barry because Barry is not an attorney for the Plan workforce.

The Court therefore concludes that Plaintiff is entitled to summary judgment that Freedom breached the BAA by divulging PHI received in the audit process to Barry, and accordingly, the Court finds it unnecessary to consider Plaintiff's remaining arguments in support of summary judgment on its breach of contract claim. Additionally, the Court's grant of summary judgment on this claim moots Plaintiff's claim for rescission – pled in the alternative to breach of contract – and Freedom's motion for summary judgment on that claim.

### B. *Recovery of Attorneys' Fees*

Freedom contends that Plaintiff's asserted damages for breach of contract, consisting entirely of attorneys' fees incurred both prior to and in the present litigation, are not recoverable because (1) parties generally bear their own litigation expenses; (2) parties may not obtain indemnity under an indemnity clause when suing to establish the right to indemnity; and (3) the fees were not incurred as a result of Freedom's conduct and are outside the scope of permitted recoveries under the indemnity clause. Plaintiff argues that recovery of these fees is expressly authorized by the indemnity clause, or in the alternative, that these expenses are recoverable as consequential damages as a matter of contract law.

With respect to the recovery of attorneys' fees, Missouri follows the American Rule, under which litigants bear their own litigation expenses, with three principal exceptions: "(1) recovery pursuant to a contract or provided by statute; (2) recovery as damages in collateral litigation; or (3) reimbursement to balance the benefits." *Lee v. Investors Title Co.*, 241 S.W.3d 366, 367 (Mo. Ct. App. 2007). Under the first exception, Missouri courts do not retain any discretion in deciding whether to award attorneys' fees once it is determined that a breach

occurred and that the contractual provision awarding fees applies. *See Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 652 (Mo. Ct. App. 1997) ("If a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party.").

Once a contract provision awarding attorneys' fees is found to be enforceable, however, the trial court retains the discretion to assess only reasonable attorneys' fees, and disagreement as to the reasonableness or amount of fees owed does not require a factfinder's determination that would preclude a grant of summary judgment. *State ex rel. Chase Resorts, Inc. v. Campbell*, 913 S.W.2d 832, 835 (Mo. Ct. App. 1995); *see also Supplemental Med. Servs. v. Medi Plex Health Care*, 293 S.W.3d 128, 132 (Mo. Ct. App. 2009) ("Although the trial court is usually granted broad discretion in awarding attorneys' fees, it has no discretion in complying with terms of attorneys' fees made by contract.").

### 1. Plaintiff's Attorneys' Fees from the Present Litigation

With respect to the attorneys' fees from this litigation, Freedom asserts that Plaintiff may not base its recovery on the indemnity clause because Plaintiff is suing on the contract, while Plaintiff claims that the indemnity clause expressly authorizes a recovery of attorneys' fees in litigation between the parties.

Courts generally do not interpret indemnity clauses as permitting the recovery of attorneys' fees in a suit between the contractual parties for breach of contract. *See Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 109 (Mo. 2003) (en banc). As courts in other jurisdictions have noted, this reflects the general presumption of the American Rule that parties bear their own litigation costs:

> [T]he purpose of an indemnity clause is to require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims.

14

> Legal fees incurred in defending against an indemnified claim . . . are one such cost and thus fall squarely within the obligation to indemnify and serve to make the indemnitee whole. This rationale, however, does not apply to legal fees incurred in establishing the existence of an obligation to indemnify . . . since such expenses are not by their nature a part of the claim indemnified against. Rather, they are costs incurred in suing for a breach of contract, namely the failure to make good on the indemnification clause. As such, the attorney's fees fall within the American Rule requiring each party to bear its own fees in litigation.

*R.R. Donnelly & Sons Co. v. Vanguard Transp. Sys., Inc.*, 641 F. Supp. 2d 707, 722 (N.D. Ill. 2009) (citing *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir. 1985)) (internal citations omitted). Parties are free to contract around this general rule, however, but the non-breaching party will be permitted to recover such fees only if the indemnity clause "*expressly provide*[*s*] for the recovery of expenses incurred in establishing the right to indemnity." *Nusbaum*, 100 S.W.3d at 109 (citing *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 368 (Mo. Ct. App. 1994)) (emphasis added).

Thus, the central inquiry for the Court is whether the indemnity clause at issue here does, in fact, expressly authorize the recovery of expenses resulting from litigation between the parties, and on this point, *Nusbaum* and other Missouri cases considering the effect of indemnity clauses in these circumstances are instructive. In *Nusbaum*, the indemnity clause stated:

> Subcontractor shall indemnify and hold harmless the Owner . . . from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under the Subcontract, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor . . . .

*Id.* at 105-06. Examining this provision, the court concluded that it would not award attorneys' fees to the Owner in its suit against the Subcontractor, finding that "[while the indemnification provision at issue . . . provides for the recovery of legal expenses, . . . nothing in the indemnification provision suggests that it provides for the recovery of legal expenses incurred in establishing the right to indemnity." *Id.* at 109.

In contrast, those Missouri cases finding express authorization to recover litigation expenses in suits on the contract have involved contract provisions that were unequivocal regarding the breaching party's obligations, and a survey of the cases reveals provisions generally falling into one of two categories. First, there are those clauses that specifically refer to the rights of the prevailing party in subsequent litigation. *See, e.g.*, *Sheppard v. East*, 192 S.W.3d 518, 523 (Mo. Ct. App. 2006) ("In the event of litigation between the parties, the prevailing party shall recover . . . the cost of litigation including reasonable attorney's fees"); *Jackson v. Christian Salvesen Holdings, Inc.*, 978 S.W.2d 377, 384 (Mo. Ct. App. 1998) ("In the event any dispute between the parties hereto concerning this Buy-Sell Agreement should result in litigation, the prevailing party shall be reimbursed by the other for all reasonable costs, including, but not limited to, reasonable attorney's fees . . . ."). Second, courts allow for the recovery of attorneys' fees in breach of contract actions under indemnity clauses that refer to losses incurred in the enforcement of contractual rights. *See, e.g.*, *RJF Int'l Corp. v. B.F. Goodrich Co.*, 880 S.W.2d 366, 369 (Mo. Ct. App. 1994) (obligation to indemnify for, among other things, "each and every failure or breach of any representation, warranty, covenant and indemnification by [the breaching party]")[11]; *Lee v. Investors Title Co.*, 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (provision to "indemnify and hold [Title Company] harmless of and from any and all loss, . . . including attorneys' fees, which [Title Company] shall or may suffer or incur or become liable for under its said policy . . .

---

[11] *RJF* involved a contract with multiple indemnity clauses, and the parties have discussed it at length as one of the clauses addressed by the court, like the indemnity clause in this case, provided for indemnity for "any breach" of the agreement. What distinguishes that case from the present case, however, is that the clause in *RJF* was invoked on appeal to recover the costs of appellate litigation, while the trial court recovery of attorneys' fees was based on the indemnity clause cited in the parenthetical above. Additionally, the former indemnity clause contained additional language referring to the "failure to satisfy any Assumed Liability," which it appears the appellate court interpreted as referring to the liability sustained in the trial court, making the litigation expenses incurred on appeal recoverable under that provision.

on a . . . claim or in connection with its enforcement of its rights under this Agreement");

*Halamicek Bros., Inc. v. R & E Asphalt Serv., Inc.*, 737 S.W.2d 193, 195 (Mo. Ct. App. 1987)

("The subcontractor agrees to pay all attorney fees, court costs, and any related expenses that the

contractor may incur in enforcing the terms of this contract."[12]).

     The indemnity clause in the BAA between Plaintiff and Freedom, in contrast, does not

unequivocally confer an indemnity obligation on Freedom in a suit between the parties.  Paragraph

7H(i) provides that

> [Freedom] will indemnify and hold harmless the District and Plan and any District
> or Plan affiliate, trustee, officer, director, employee, volunteer or agent from and
> against any claim, cause of action, liability, damage, cost or expense, including
> attorneys' fees or court or proceedings costs, arising out of or in connection with
> any unauthorized use or disclosure of PHI or any failure in security measures
> affecting PHI or any other breach of the terms of the Agreement by [Freedom] or
> any person or entity under [Freedom]'s control.

Although this provision does state that a "breach of the terms of the Agreement" will give rise to

the indemnity obligation, it does not include any language indicating that the clause applies to

litigation between the parties – unlike the indemnity clauses discussed above, it does not expressly

refer to litigation between the parties or to actions to enforce the BAA's terms.  Furthermore, the

next paragraph in the BAA, paragraph 7I, addresses the non-breaching party's right to tender or

undertake its defense in proceedings related to impermissible PHI disclosures, a provision that

would be rendered meaningless if the indemnity clause applied to actions on the contract.  *See*

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905-06 (N.Y. 1989) (noting

provisions applicable only to third-party claims, including a tender of defense provision, in finding

---

[12] The court states that attorneys' fees "were authorized recoveries under the terms of the
subcontract," but the quoted text of the indemnity clause does not appear in the opinion.  *See*
*Halamicek Bros.*, 737 S.W.2d at 195.  Defendants, however, located a copy of the subcontract
and provided it for the Court.

indemnity clause inapplicable in breach of contract action). Plaintiff, as a sophisticated contracting party, should have been aware that an indemnity clause must be unequivocal in order to permit this type of recovery, and as a matter of Missouri law, the Court may not infer such an intention in the absence of express language. *See Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 109 (Mo. 2003) (en banc).

In sum, the Court finds no basis in the language of the indemnity clause for concluding that it expressly provides for the recovery of litigation expenses in a breach of contract action between the contractual parties. Accordingly, the Court concludes that Freedom is entitled to summary judgment that Plaintiff is not entitled to recover its attorneys' fees from the present litigation on its claim for breach of contract. The general presumption is that parties bear their own litigation costs, and Freedom has demonstrated that the language of the BAA's indemnity clause is insufficient to overcome that presumption.

### 2. Plaintiff's Attorneys' Fees Incurred Prior to This Litigation

Freedom also seeks summary judgment that Plaintiff may not recover the attorneys' fees it incurred prior to this litigation, because Plaintiff's directors brought about those damages by mismanaging the Plan. Plaintiff argues that it is entitled to recover these damages under both of the first two exceptions to the American Rule, for "recovery pursuant to a contract," or in the alternative, "as damages in collateral litigation."[13] *See Lee v. Investors Title Co.*, 241 S.W.3d 366, 367 (Mo. Ct. App. 2007).

General principles of contract law impose a causation requirement on the recovery of damages. In addition to actual damages – those intended to give the non-breaching party the

---

[13] Plaintiff also suggests that these damages could be characterized as actual damages, but provides no authority or discussion in support of that argument. Accordingly, the court does not address it.

benefit of the bargain – a successful plaintiff in a breach of contract action may also recover consequential damages, those that are "naturally and proximately caused by the commission of the breach" and "reasonably contemplated by the defendant at the time of the agreement." *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 717 (Mo. Ct. App. 2004) (internal quotations and citations omitted). "Where the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 657 (Mo. 2009) (internal quotations and citations omitted). These principles notwithstanding, a party in breach may only be held liable "for those consequences that were reasonably foreseeable at the time the parties entered into the contract." *Gill Constr.*, 157 S.W.3d at 717 (internal quotations and citations omitted).

The BAA's indemnity clause provides another possible avenue for Plaintiff to recover these attorneys' fees. As discussed above, paragraph 7H(i) requires Freedom to indemnify Plaintiff

> from and against any claim, cause of action, liability, damage, cost or expense, including attorneys' fees and court or proceeding costs, arising out of or in connection with any unauthorized use or disclosure of PHI or any failure in security measures affecting PHI or any other breach of the terms of this Agreement by [Freedom] or any person or entity under [Freedom's] control.

Thus, in order to recover under this clause, Plaintiff must establish that these losses arose out of or occurred in connection with Freedom's breach of the BAA – that is, not as a result of Plaintiff's own actions or due to some superseding cause. While there does not appear to be any Missouri authority on this topic, at least one jurisdiction interprets this "arising out of or in connection with" language as imposing a standard of causation less onerous than the proximate

causation required to recover consequential damages for breach of contract.  *See Coastal Mart, Inc. v. Sw. Bell Tele. Co.*, 154 S.W.3d 839, 845 (Tex. Ct. App. 2005).  In *Coastal Mart*, the court concluded that "arising from or connected with," as used in an indemnity clause, does not require proximate causation, but that the plain meaning of this phrase indicates that the court need only find "some nexus between [defendant's] obligations under the contract and the detriment for which indemnity is sought." *Id.*  The Court finds this to be an eminently reasonable and sensible reading of this language, and accordingly follows this interpretation in the present case.

With respect to the attorneys' fees incurred in responding to the Privileged Supplement, Plaintiff has failed to come forward with evidence sufficient to recover these fees as consequential damages or pursuant to the indemnity clause.  Contrary to Plaintiff's allegation that Freedom's breach of the BAA brought about these expenses, the evidence in the record indicates that Plaintiff's board of directors chose to respond based on the conclusions in the Privileged Supplement that there had been abuse of the Plan.  According to the uncontroverted testimony of Plaintiff director Rick Gans, the board believed that the findings of the audit were, at best, misleading, and therefore decided to hire attorneys to conduct its own investigation to counter Freedom's findings.  There is no suggestion in the record that Plaintiff would not have responded if Freedom had communicated the Privileged Supplement only to Plaintiff (and not also to Barry); it was the conclusions that caused Plaintiff to respond, not Freedom's *means* of communicating its conclusions.  Plaintiff has presented no evidence creating a genuine issue of material fact as to whether these expenses were caused by Freedom's disclosures of PHI to Barry, and they therefore cannot be recovered as consequential damages or under the BAA's indemnity clause as a matter of law.

The Court does conclude, however, that there are genuine issues of material fact as to whether Plaintiff's legal expenses of providing representation to its directors in the criminal investigation were caused by Freedom's breach of the BAA, such that they may be recovered as consequential damages or under the BAA's indemnity clause.[14] As discussed above, Freedom breached the BAA by providing the Privileged Supplement and the medical records of Plan participants to Barry, attorney for Local 2665, who forwarded that information to local, state, and federal law enforcement. The natural and proximate result of those communications was the criminal investigation that followed, and Freedom concedes that it was aware that Barry might take such action upon receiving the Privileged Supplement. In fact, Freedom asserts that in giving the Privileged Supplement to Barry, it intended for him to make the decision as to whether HIPAA regulations permitted or required Freedom to communicate their findings to law enforcement, as evidence of possible wrongdoing on the part of Plaintiff's board. Moreover, these damages were "reasonably foreseeable at the time the parties entered into the contract," *Gill Constr.*, 157 S.W.3d at 717, in that provisions of the BAA clearly contemplate the possibility of reporting activities to law enforcement, and Indellicati was aware that Local 2665 was concerned about such activities when it hired her to perform the audit. Thus, as a matter of proximate causation and under the lower causation standard imposed by the indemnity clause, Plaintiff has

---

[14] Freedom did not plead in its Answer, and does not argue, that it would be against public policy to enforce the indemnity clause to permit Plaintiff to recover its legal expenses from the criminal investigation, where Plaintiff does not contend that Defendants provided false information to law enforcement. The Court is therefore unable to consider the issue because the unenforceability of a contract or contract provision on public policy grounds is an affirmative defense. *See, e.g.*, *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 667 (Mo. Ct. App. 2008) (failure to raise affirmative defense that contract is unenforceable on public policy grounds waives the defense).

presented sufficient evidence to withstand Freedom's motion for summary judgment that the attorneys' fees arising out of the criminal investigation are not recoverable.

In sum, the Court concludes that Freedom's motions for summary judgment, concerning Plaintiff's ability to recover its damages, will be granted in part and denied in part. Plaintiff is not entitled to recover its attorneys' fees from this litigation as a matter of law because the indemnity clause does not expressly provide for a recovery of legal expenses in actions on the contract. Additionally, Plaintiff may not recover its litigation expenses connected with responding to the Privileged Supplement because Plaintiff has not presented any evidence demonstrating that the response was necessitated or otherwise caused by Freedom's breach of the BAA. Freedom is not entitled to summary judgment, however, as to the attorneys' fees Plaintiff expended in providing legal representation for its directors, because the evidence in the record establishes that Freedom directly brought about the criminal investigation by divulging PHI to Barry in violation of the BAA, and that Freedom was aware of the possibility of such an investigation when the parties executed the contract.

## C.    *Conversion*

Both parties move for summary judgment on Plaintiff's Count III, alleging that Defendants[15] tortiously converted PHI from the Plan. Defendants contend that a conversion claim does not lie in these circumstances because Plaintiff continued to have access to the allegedly converted PHI, while Plaintiff argues that Defendants' wrongful retention and disclosure of PHI establishes conversion as a matter of law.

---

[15] Plaintiff asserts this claim, and its claim for a mandatory injunction, against Defendant Freedom and the individual Defendants Indellicati and Turner.

Under Missouri law, conversion occurs where there is an "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. 1988). As such, a claim for conversion has the following three elements: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *JEP Enters., Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 776 (Mo. Ct. App. 2001). A party who takes possession of property lawfully but then wrongfully refuses to return it to its owner may be subject to liability for conversion. *Emerick*, 756 S.W.2d at 525.

There is no dispute that Defendants continue to possess property – paper and electronic documents containing PHI – of which Plaintiff is the rightful owner, that Defendants initially took possession of those documents lawfully, and that Defendants have refused Plaintiff's demands to return the documents. It is also undisputed, however, that the documentation at issue consists solely of copies of documents retained by Plaintiff and reports generated from information to which Plaintiff has had uninterrupted access.

The overwhelming weight of authority holds that a copy of a document cannot be converted because the owner has not been deprived of possession. *See Riley v. L.J. Schuster Co.*, 844 S.W.2d 521, 523 (Mo. Ct. App. 1992) (no conversion claim where defendants obtained copies of plaintiff's order log and inventory report and left originals with plaintiff); *Schaefer v. Spence*, 813 S.W.2d 92, 97 (Mo. Ct. App. 1991) (noting that plaintiff retained the information in finding that a recipe is not subject to conversion under Missouri law); *see also FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990) (California law) ("[T]he possession of copies of documents – as opposed to the documents themselves – does not amount to an

interference with the owner's property sufficient to constitute conversion."); *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 763 (D. Colo. 2007) (Colorado law) (same). Furthermore, although some courts have reached the opposite result, that generally only occurs in situations in which the defendant used the property to the defendant's advantage, with the effect of reducing its value to the plaintiff. *See U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 2009 WL 3871824, at *3 (N.D. Ill. 2009) (discussing Illinois cases).

Plaintiff's conversion claim, like the claims rejected in *Riley* and *Schaefer*, is based on a situation in which the property's rightful owner – Plaintiff – was never actually deprived of the property at issue. As mentioned above, Plaintiff does not dispute that it has had, and continues to have, access to all of the information contained in the allegedly converted documents retained by Defendants. Moreover, Plaintiff has not alleged that Defendants have used the PHI to its detriment in any way in the time period since Plaintiff demanded that the PHI be returned, that demand being a prerequisite to Plaintiff's claim. *See Green Valley Seed, Inc. v. Plenge*, 72 S.W.3d 601, 603 (Mo. Ct. App. 2002) (plaintiff alleging conversion where defendant's possession was initially lawful must prove that a demand for return of property was made as an element of the claim).

The Court therefore concludes that Defendants are entitled to summary judgment on Plaintiff's claim for conversion. Conversion requires an interference with the owner's property rights, and it is undisputed here that Plaintiff has not been deprived of the possession or use of any the allegedly converted PHI.

### D.     *Punitive Damages*

Defendants seek summary judgment that Plaintiff is not entitled to recover punitive damages, which it has requested pursuant to its Count II for rescission and Count III for

conversion. Because the Court has determined that Defendants are entitled to summary judgment on Plaintiff's conversion claim, and because Plaintiff's rescission claim was mooted by the Court's grant of summary judgment in favor of Plaintiff on its breach of contract claim, Plaintiff no longer has a claim that would support a request for punitive damages.

Even if Plaintiff's rescission claim was not moot, however, it would still not be entitled to recover punitive damages because such a recovery requires proof of an independent tort and malice, and the Court has determined that Plaintiff's sole tort claim, for conversion, is not viable. *See Phillips v. Bradshaw*, 859 S.W.2d 232, 235 (Mo. Ct. App. 1993) (rescission plaintiff "would have a claim for punitive damages only if [the defendant's actions] constituted an independent tort and his conduct was malicious."). Plaintiff does not claim that its allegations would support a cause of action for some other tort, and accordingly, Defendants are entitled to summary judgment that Plaintiff may not recover punitive damages in this case.

### E.    *Mandatory Injunctive Relief*

Plaintiff requests summary judgment on its Count V for a mandatory injunction, requiring Defendants to return all audit-related PHI to Plaintiff. Defendants contend that Plaintiff cannot demonstrate a threat of irreparable harm.[16]

In addition to the requirement of actual success on the merits, the following three factors are relevant when determining whether a permanent injunction should issue: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; and (3) the public interest. *Bank One, Utah v.*

---

[16] Defendants also contend that the Court should allow the parties to coordinate the return of Plaintiff's PHI without court intervention. Thus far, however, the Court has seen no sign that the parties are able to settle *any* dispute without court intervention, let alone the central dispute in this litigation.

*Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) (standard for mandatory injunctions is "essentially the same" as the standard for preliminary injunctions set forth in *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

Plaintiff has established actual success on the merits on its claim for breach of contract, discussed above in section III.A, and the other *Dataphase* factors also indicate that injunctive relief is appropriate. In terms of the threat of irreparable harm, Plaintiff correctly asserts that the possibility of further improper disclosures of PHI by Defendants opens it up to threat of litigation from Plan participants. This threat is not readily quantifiable, and although Plaintiff is protected from third-party claims to some degree by the BAA's indemnity clause, that protection is only meaningful to the extent Freedom continues to exist and has sufficient assets to satisfy such a judgment.

The remaining two factors likewise weigh heavily in favor of granting injunctive relief. The Court is required to consider the balance between the harm avoided by the injunction and the harm caused, and in this case, there is no apparent injury to third parties that would result from granting this relief. In fact, the only third parties who would arguably be affected by the injunction are those individuals about whom Defendants possess PHI, and they would presumably prefer that this relief be granted. As for the public interest, Defendants have not offered any colorable argument as to how the public interest would be affected by Plaintiff's requested injunctive relief, and the Court has also been unable to identify any possible detrimental effect.

The Court therefore concludes that Plaintiff's request for mandatory injunctive relief, requiring Defendants to return to Plaintiff all PHI received in conjunction with the Plan audit, will be granted on summary judgment. Defendants' continued possession of PHI exposes Plaintiff to the possibility of burdensome and expensive litigation with third parties, and the simplest and most

direct means of addressing that potential harm is by requiring Defendants to return all of the PHI in their possession to Plaintiff. The one caveat, however, is that the Court previously indicated that Defendants may retain the PHI at issue for purposes of this litigation, and accordingly, the injunction will not issue until the conclusion of this litigation.

## IV.     CONCLUSION

The Court finds that summary judgment will be granted in favor of Plaintiff on two of its claims. Plaintiff is entitled to summary judgment on its claim for breach of contract against Freedom, based on Freedom's disclosures of Plan PHI to a third party in violation of the BAA between Plaintiff and Freedom. The Court also grants summary judgment to Plaintiff on its claim against Defendants for a mandatory injunction requiring Defendants to return all Plan PHI to Plaintiff, but that injunction will not issue until the conclusion of this litigation.

Defendants are likewise entitled to summary judgment on several issues. With respect to Plaintiff's claim for breach of contract, Freedom has established that summary judgment is proper that Plaintiff may not recover, as damages for breach of contract or pursuant to the BAA's indemnity clause, its attorneys' fees from this litigation or the legal expenses it incurred in responding to the Privileged Supplement released by Defendants. This ruling does not affect Plaintiff's recovery of the legal expenses stemming from the St. Louis County criminal investigation into the actions of Plaintiff's board of directors concerning Plan administration. Defendants are also entitled to summary judgment on Plaintiff's claim for conversion and on its request for punitive damages. Defendants' motion for summary judgment on Plaintiff's rescission claim is moot because the Court's grant of summary judgment on Plaintiff's breach of contract claim mooted its claim for rescission.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's First Motion for Summary Judgment (Count I – Breach of Contract, Defendant Freedom) [doc. #162] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Summary Judgment (Count III – Conversion, All Defendants) [doc. #164] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Third Motion for Summary Judgment (Count V – Mandatory Injunction, All Defendants) [doc. #166] is **GRANTED**. Defendants are entitled to access to relevant PHI through the conclusion of this litigation, however, and accordingly the injunction will not issue until that time.

**IT IS FURTHER ORDERED** that Defendants' First Motion for Partial Summary Judgment Regarding Nonrecoverability of Attorneys' Fees [doc. #219] is **GRANTED**. Pursuant to this Order, Plaintiff may not recover the attorneys' fees it incurred in this litigation under the indemnity clause of the parties' Business Associate Agreement.

**IT IS FURTHER ORDERED** that Defendants' Second Motion for Partial Summary Judgment on Count III for Conversion [doc. #228] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Third Motion for Partial Summary Judgment Regarding Nonrecoverability of Damages Arising from Mismanagement [doc. #231] is **GRANTED, in part** and **DENIED, in part**. Defendants' Motion is granted with respect to Plaintiff's attorneys' fees incurred in responding to the Privileged Supplement, and denied as to Plaintiff's expenses in providing legal representation to its directors in connection with the St. Louis County criminal investigation.

**IT IS FURTHER ORDERED** that Defendants' Fourth Motion for Partial Summary Judgment Regarding Nonrecoverability of Punitive Damages [doc. #234] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Fifth Motion for Partial Summary Judgment on Rescission (Count II) [doc. #237] is **DENIED, as moot**.  The Court's grant of summary judgment on Plaintiff's claim for breach of contract mooted its claim for rescission.

Dated this 21st Day of December, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE